FILED

1   Dylan C. Jones
    Fed. Reg. No. 97330-298   FEEPAID
2   FCI Terminal Island
    P.O. Box 3007             2022 JUL 29 PM 1:52
3   San Pedro, CA 90733
    Pro Se                    CLERK U.S. DISTRICT COURT
                              CENTRAL DIST. OF CALIF
4                             LOS ANGELES
                              BY: EEE
5

6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                           2:22-CV-05292-MCS(GJS)

11  DYLAN C. JONES,          )    Case No._____
                  Petitioner,)
12                           )    PETITIONER'S PRO SE
        vs.                  )    MOTION PURSUANT TO 28 USC
13                           )    § 2241 FOR (a) APPLICA-
    WARDEN J. ENGLEMAN,      )    TION OF FIRST STEP ACT
14                Respondent.)    (FSA) EARNED TIME CREDITS
                             )    TOWARD REMAINING SENTENCE
15                           )    AND (b) IMMEDIATE RELEASE
                             )
16  ─────────────────────────)

17

18       Pursuant to 28 U.S.C. § 2241 and the First Step Act,

19  Public Law 115-391, Mr. Dylan Christopher Jones (Fed. Reg.

20  No. 97330-298), Petitioner, hereby moves the Court for an

21  order directing Warden J. Engleman of FCI Terminal Island to

22  (a) apply Mr. Jones' earned First Step Act credits towards

23  Mr. Jones' remaining sentence and (b) immediately release

24  Mr. Jones to supervised release. Absent the relief requested

25  herein, Petitioner, who should be scheduled to be released

26  no later than the end of August, will lose months of his

27  liberty and suffer severe prejudice. In support of Petition-

28  er's motion, Petitioner alleges as follows:

## I.    FACTUAL BACKGROUND

On March 12, 2021, Petitioner was sentenced to a term of imprisonment of 34 months and five years of supervised release as a result of Petitioner's guilty plea to one count of importing methamphetamine. See Exhibit A attached hereto, p. 2. In connection with the sentence imposed, the Hon. Todd W. Robinson, Judge of the United States District Court for the Southern District of California, recommended that Petitioner participate in the Bureau of Prisons' Residential Drug Abuse Program (RDAP) and that Petitioner be incarcerated at FCI Terminal Island or FCI Lompoc to facilitate RDAP and family visits. Id.

As of the date of his sentencing, Petitioner had been incarcerated since approximately November 10, 2020. Following his sentencing, Petitioner remained in custody but was unable to be transported to his designated facility—Terminal Island—until approximately May 16, 2021, due to COVID-19 protocols implemented by the Bureau of Prisons ("BOP").

Within days after arriving at Terminal Island, Petitioner began inquiring about how he could participate in the RDAP program as recommended by the sentencing court. After months of delay, Petitioner was finally permitted to begin participating in October 2021. The nine-month program is scheduled to conclude in the coming weeks, in August 2022. However, the BOP has erroneously informed Petitioner that it will not give Petitioner the standard additional nine months of RDAP sentence reduction on a 34-month sentence because Petitioner has a state criminal case pending in the

1   State of Missouri (filed in May 2018). Importantly, that case

2   is not a detainer applicable to Petitioner; rather,

3   Petitioner remains on a personal recognizance bond as he has

4   since 2018.

5       During his incarceration at Terminal Island over the

6   last 14 months, Petitioner has remained a model inmate with

7   a spotless disciplinary record, and Petitioner's risk of

8   recidivism as measured on the BOP's PATTERN scoring has

9   remained at "Low." Further, in addition to his participation

10   in RDAP, which qualifies as programming under the First Step

11   Act, Petitioner has also completed other FSA-approved

12   programs and activities which have earned Petitioner Earned

13   Time Credits ("ETC"). These credits, which total approxi-

14   mately seven months as of this filing, and increase 15

15   days for every additional month Petitioner is incarcerated,

16   entitle Petitioner to early release from prison and release

17   to home confinement or a halfway house, or early transfer to

18   supervised release (early satisfaction of the Petitioner's

19   sentence).

20       However, as discussed more fully below, and in direct

21   violation of the FSA, Respondent and the Bureau of Prisons

22   refuse to apply Petitioner's ETC, adjust Petitioner's release

23   date and release him from Terminal Island.

24       Petitioner's Sentence Computation as provided by the

25   BOP, attached as Exhibit B, accurately shows that Petitioner

26   has no detainers and is "Eligible" for FSA benefits and

27   credits. It further reflects that without any application of

28   the more than seven months of ETC due Petitioner, Petitioner

1  is due to be released on April 9, 2023. Id. Were Respondent
2  and the BOP, however, to follow the law and properly apply
3  the ETCs earned by Petitioner, Petitioner would be required
4  to be released from Terminal Island no later than August, if
5  not immediately.

6      Earlier this year, on or about January 20, 2022,
7  Respondent and the BOP agreed with Petitioner that he is
8  entitled to the application of credit under the FSA. Id.
9  On June 24, 2022, however, Respondent and the BOP reversed
10 course and subsequently informed Petitioner that they were
11 refusing to apply any ETCs for Petitioner's benefit. The
12 purported rationale for this erroneous decision is Petition-
13 er's pending state case in Missouri, which as explained
14 above, is neither a detainer nor a conviction.

15     As of the date of this filing, Petitioner has had
16 multiple communications with staff at Terminal Island
17 relating to Petitioner's rights under the FSA and his right
18 to be released no later than in August. Respondent's staff
19 has repeatedly informed Petitioner that the decision is
20 final and that Petitioner will receive none of the benefits
21 under the FSA, despite being eligible. Accordingly,
22 exhausting his administrative remedies is futile at this
23 juncture, especially due to his impending release date (if
24 properly calculated). To be clear, Petitioner will suffer
25 "irreparable harm if unable to secure immediate judicial
26 consideration of his claim." McCarthy v. Madigan, 503 US 140,
27 146-47 (1992).
28 //

## II.   LEGAL AUTHORITY AND ARGUMENT

Because Petitioner's challenge to Respondent and the BOP's calculation and application of ETCs is a challenge to the execution of his sentence, this petition is properly brought as a petition  for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court for the district in which Petitioner is in custody. See, e.g., United States v. Kinsey, 393 F. App'x 663, 664 (11th Cir. 2010)(citing Bishop v. Reno, 210 F.3d 1295, 1304, n.14 (11th Cir. 2020)).

Further, as described above, because of Petitioner's impending release date and the imminent irreparable harm that will result absent the relief requested herein, Petitioner is excused from exhausting his administrative remedies.

On December 21, 2018, President Donald J. Trump signed the First Step Act of 2018 into law. See FSA, Public Law 115-391. Under 18 U.S.C. § 3632(d)(4)(A), inmates such as Petitioner are to earn 15 days of ETC for every 30 days of successful participation in approved programming or productive activities. Pursuant to §3632(d)(4)(C), these credits "shall be applied toward time in prerelease custody or supervised release." The only exceptions to this clear mandate are set forth in §3632(d)(4)(D), relating to prisoners serving sentences for a disqualifying offense (as listed), and §3632(d)(4)(E), which provides that an inmate who is already the subject of a final order of deportation (i.e. has been expressly ordered to be deported and such order is final, meaning non-appealable) is ineligible.

- 5 -

1    Critically, Petitioner is not serving a sentence for a

2    disqualifying offense nor has he been ordered to be deported.

3    Accordingly, he is entitled to immediate application of his

4    time credits toward prerelease custody or supervised release.

5    Under the well established law of this circuit, the

6    unambiguous words of the FSA must be given their plain and

7    orinary meaning. "Shall be applied" means exactly what it

8    says. Moreover, nowhere in the FSA does it permit Respondent

9    or the BOP to refuse to apply an inmate's ETCs because of a

10   pending state case, which predates the federal offense and

11   sentence, and for which the inmate is on a personal recog-

12   nizance bond. Had Congress wished to grant the BOP such

13   authority, it clearly would have done so as evidenced by

14   the inclusion of §§3632(d)(4)(D) and (E).

15       According to a recent sworn declaration submitted in an

16   analagous case by the BOP, its interim procedures presently

17   being used to calculate an eligible inmate's ETC provide for

18   the following basic calculation: time in custody post

19   December 2018 divided by 30 days, multiplied by 15. See

20   Exhibit C at 9-14; see also Order;  Opinion and Report and

21   Recommendation attached hereto as Exhibit D (awarding

22   petitioner ETC toward release and noting that the BOP's

23   current approach to crediting ETC "causes concern." (p. 13)).

24   As a result, Petitioner is presently entitled (a) to have in

25   excess of seven months of credit immediately applied toward

26   his release and (b) to be immediately placed on supervised

27   release.

28   //

## III. CONCLUSION

For each of the foregoing reasons, Petitioner respect-fully requests that the Court grant this petition and the relief requested herein.

I, Dylan C. Jones, under penalty of perjury under the laws of the United States of America, hereby affirm that all statements herein are true and correct to the best of my knowledge.

Dated this _11th_ day of July, 2022, at San Pedro, CA.

Respectfully submitted,

Dylan C. Jones
Fed. Reg. No. 97330-298
Pro Se Petitioner
FCI Terminal Island
P.O. Box 3007
San Pedro, CA 90733

# EXHIBIT

## "A"

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

**FILED**

MAR **15** 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

**V.**

DYLAN CHRISTOPHER JONES (1)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:  3:20-CR-02997-TWR

Knut S Johnson
_____
Defendant's Attorney

**USM Number**          97330-298

☐ -

THE DEFENDANT:

☒ pleaded guilty to count(s)   1 of the Information _____

☐ was found guilty on count(s)  _____
after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| **Title and Section / Nature of Offense** | **Count** |
|---|---|
| 21:952,960 - Importation Of Methamphetamine (Felony) | 1 |

The defendant is sentenced as provided in pages 2 through _____**5**_____ of this judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  is   dismissed on the motion of the United States.

☒ Assessment : $100.00
  —

☐ JVTA Assessment*: $
  -

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

☒ No fine          ☐ Forfeiture pursuant to order filed _____ , included herein.

IT IS ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in the defendant's economic circumstances.

March 12, 2021
_____
Date of Imposition of Sentence

_____

HON. TODD W. ROBINSON
UNITED STATES DISTRICT JUDGE

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| DEFENDANT: | DYLAN CHRISTOPHER JONES (1) | Judgment - Page **2** of 5 |
| CASE NUMBER: | 3:20-CR-02997-TWR | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
34 months as to count 1

☐    Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒    The court makes the following recommendations to the Bureau of Prisons:
     1.   Residential Drug Abuse Program (RDAP)
     2.   Designation at Terminal Island or Lompoc to facilitate RDAP and family visits

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant must surrender to the United States Marshal for this district:
     ☐   at  _____ A.M.     on  _____
     ☐   as notified by the United States Marshal.

☐    The defendant must surrender for service of sentence at the institution designated by the Bureau of Prisons:
     ☐   on or before
     ☐   as notified by the United States Marshal.
     ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____ to  _____

at  _____ , with a certified copy of this judgment.

_____

                   UNITED STATES MARSHAL

By            DEPUTY UNITED STATES MARSHAL

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | DYLAN CHRISTOPHER JONES (1) | Judgment - Page 3 of 5 |
| CASE NUMBER: | 3:20-CR-02997-TWR | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant will be on supervised release for a term of:
5 years

## MANDATORY CONDITIONS

1. The defendant must not commit another federal, state or local crime.
2. The defendant must not unlawfully possess a controlled substance.
3. The defendant must not illegally possess a controlled substance. The defendant must refrain from any unlawful use of a controlled substance. The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than 4 drug tests per month during the term of supervision, unless otherwise ordered by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (check if applicable)

4. ☐ The defendant must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. (check if applicable)
5. ☒ The defendant must cooperate in the collection of DNA as directed by the probation officer. (check if applicable)
6. ☐ The defendant must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where the defendant resides, works, is a student, or was convicted of a qualifying offense. (check if applicable)
7. ☐ The defendant must participate in an approved program for domestic violence. (check if applicable)

The defendant must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| DEFENDANT: | DYLAN CHRISTOPHER JONES (1) | Judgment - Page **4** of 5 |
|---|---|---|
| CASE NUMBER: | 3:20-CR-02997-TWR | |

## STANDARD CONDITIONS OF SUPERVISION

As part of the defendant's supervised release, the defendant must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for the defendant's behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in the defendant's conduct and condition.

1. The defendant must report to the probation office in the federal judicial district where they are authorized to reside within 72 hours of their release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when the defendant must report to the probation officer, and the defendant must report to the probation officer as instructed.

3. The defendant must not knowingly leave the federal judicial district where the defendant is authorized to reside without first getting permission from the court or the probation officer.

4. The defendant must answer truthfully the questions asked by their probation officer.

5. The defendant must live at a place approved by the probation officer. If the defendant plans to change where they live or anything about their living arrangements (such as the people living with the defendant), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. The defendant must allow the probation officer to visit them at any time at their home or elsewhere, and the defendant must permit the probation officer to take any items prohibited by the conditions of their supervision that he or she observes in plain view.

7. The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment the defendant must try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about their work (such as their position or their job responsibilities), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. The defendant must not communicate or interact with someone they know is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, they must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If the defendant is arrested or questioned by a law enforcement officer, the defendant must notify the probation officer within 72 hours.

10. The defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. The defendant must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant must comply with that instruction. The probation officer may contact the person and confirm that the defendant notified the person about the risk.

13. The defendant must follow the instructions of the probation officer related to the conditions of supervision.

3:20-CR-02997-TWR

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| DEFENDANT: | DYLAN CHRISTOPHER JONES (1) | Judgment - Page **5** of **5** |
|---|---|---|
| CASE NUMBER: | 3:20-CR-02997-TWR | |

### SPECIAL CONDITIONS OF SUPERVISION

1. Not enter or reside in the Republic of Mexico without permission of the court or probation officer and comply with both United States and Mexican immigration laws.

2. Participate in a program of drug or alcohol abuse treatment, including drug testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

3. Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

4. Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of up to 120 days (non-punitive).

5. Resolve all outstanding warrants within 120 days.

//

EXHIBIT

"B"

```
   TRMGH  540*23 *           SENTENCE MONITORING           *    07-06-2022
PAGE 001        *             COMPUTATION DATA             *    06:44:39
                               AS OF 07-06-2022


REGNO..: 97330-298 NAME: JONES, DYLAN CHRISTOP


  FBI NO............: 451964ND3          DATE OF BIRTH: 12-17-1984  AGE:  37
  ARS1.............: TRM/A-DES
  UNIT.............: D                   QUARTERS.....: D01-001U
  DETAINERS........: NO                  NOTIFICATIONS: NO

  FSA ELIGIBILITY STATUS IS: ELIGIBLE

  THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

  HOME DETENTION ELIGIBILITY DATE....: 12-28-2022

  THE INMATE IS PROJECTED FOR RELEASE: 04-09-2023 VIA GCT REL

  REMARKS........: 01-20-2022: PRD ADJ DUE TO FSA FTC APPLIED, P/SMB.

             RELEASE AUDIT COMPLETED ON 02-10-2022 BY DSCC
------------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: CALIFORNIA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 3:20-CR-02997-TWR
JUDGE..........................: ROBINSON
DATE SENTENCED/PROBATION IMPOSED: 03-12-2021
DATE COMMITTED.................: 05-13-2021
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO

               FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.: $100.00       $00.00         $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:
OFF/CHG:

  SENTENCE PROCEDURE............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   34 MONTHS
  TERM OF SUPERVISION...........:    5 YEARS
  DATE OF OFFENSE...............: 08-29-2020




  G0002       MORE PAGES TO FOLLOW . . .
```

```
TRMGH  540*23 *           SENTENCE MONITORING        *      07-06-2022
PAGE 002        *           COMPUTATION DATA          *      06:44:39
                             AS OF 07-06-2022
```

REGNO..: 97330-298 NAME: JONES, DYLAN CHRISTOP


------------------------CURRENT COMPUTATION NO: 010 -----------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-24-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-25-2021 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 03-12-2021
TOTAL TERM IN EFFECT............:  34 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   2 YEARS     10 MONTHS
EARLIEST DATE OF OFFENSE........: 08-29-2020

JAIL CREDIT.....................:  FROM DATE     THRU DATE
                                   08-29-2020    08-29-2020
                                   09-10-2020    09-10-2020
                                   11-10-2020    03-11-2021

TOTAL PRIOR CREDIT TIME.........: 124
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 153
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 04-09-2023
ELDERLY OFFENDER TWO THIRDS DATE: 09-29-2022
EXPIRATION FULL TERM DATE.......: 09-09-2023
TIME SERVED.....................:   1 YEARS      7 MONTHS      29 DAYS
PERCENTAGE OF FULL TERM SERVED..:  58.4
PERCENT OF STATUTORY TERM SERVED:  68.6
```

G0002      MORE PAGES TO FOLLOW . . .

```
   TRMGH  540*23 *           SENTENCE MONITORING        *      07-06-2022
PAGE 003 OF 003 *            COMPUTATION DATA           *      06:44:39
                              AS OF 07-06-2022
```

REGNO..: 97330-298 NAME: JONES, DYLAN CHRISTOP


PROJECTED SATISFACTION DATE.....: 04-09-2023
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 06-24-22 RPC TO REMOVE FSA FTC FOR PENDING CHARGES. 4/LWG


G0000       TRANSACTION SUCCESSFULLY COMPLETED

# EXHIBIT

# "C"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

Robert S. Stewart, Jr.,
Reg. No.

    Petitioner,         :   CASE NO.: 1:22-cv-00294-MHH-JHE

    v.

WARDEN, FCI TALLADEGA,

    Respondent.

## DECLARATION OF SUSAN GIDDINGS

    I, SUSAN GIDDINGS, hereby declare and state the following:

1. I am an employee of the United States Department of Justice, Federal Bureau of Prisons ("BOP"). Specifically, I am Chief of the Unit Management Section of the Correctional Programs Branch ("CPB"), which is organized under the Correctional Programs Division ("CPD") in the BOP's Central Office located in Washington, D.C. I have worked for the BOP since February 1991 and have been the Unit Management Section Chief since December 2019.

2. As the Unit Management Section Chief, I am responsible for overseeing Correctional Systems and the BOP's national Victim and Witness Program. Additionally, I have been intimately involved in the development and implementation of the BOP's FSA procedures. As such, I work closely with the Office of Research and Evaluation ("ORE") and the Office of Information Technology ("OIT"). As part of my duties,

I also have access to BOP files maintained in the ordinary course of business related to inmates incarcerated within the BOP, including the SENTRY database.[1]

3. Petitioner, Robert S. Stewart Jr., federal register number 28576-509, is an inmate currently incarcerated on home confinement. Petitioner alleges that the BOP improperly calculated his First Step Act ("FSA") time credits.

4. Upon the request of BOP legal staff, I have reviewed the BOP's calculation of Petitioner's FSA time credits. For reasons that are not apparent to me, Petitioner's FSA time credits were in fact incorrectly calculated at the time he filed his petition. I have attached Attachment 1, a copy of the original FSA calculation indicating 61 days of FSA credit, and Attachment 2 that includes the updated FSA calculation indicating Petitioner is receiving 75 days of FSA credit. As reflected below in Attachment 2, Petitioner's FSA time credits are now properly calculated at 75 days. ORE reviewed Petitioner's records and manually calculated his FSA time credits. I personally reviewed ORE's calculation and conducted my own independent calculation. I concur with ORE's calculation of 75 days.

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

5.  A true and correct copy of Petitioner's complete sentence computation data as it existed at the time that he filed the petition titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as Attachment 1.  This report was generated on April 12, 2022, and shows the following:

    a.  On June 16, 2021, the United States District Court in the Eastern District of Virginia sentenced Petitioner to a sentence of 21 months of imprisonment and three years of supervised release in case numbers 1:21CR00005-001 for violating 18 U.S.C. 1001(A)(2), 1343, & 641 for false statements, wire fraud, and theft of government funds. Attachment 1, p. 2.

    b.  On July 28, 2021, Petitioner voluntarily surrendered to the Federal Correctional Institution in Talladega, Alabama, ("FCI Talladega") to commence his federal sentence.  Petitioner's full term release date is April 7, 2023. Attachment 1, p. 1, & 2.

    c.  Petitioner's FSA eligibility status reflects "eligible," meaning he is eligible to apply earned time FSA credits towards his statutory release date. Attachment 1, p. 1.

    d.  Petitioner's final statutory release date via good conduct time release reflects January 3, 2023. This date is what was formerly referred to as a good conduct time release date. It is calculated by subtracting any earned and projected good conduct time from his full-term release date. In this case, Petitioner's earned and projected good conduct time is 94 days, and his full-term release date is April 7, 2023. His statutory release date is January 3, 2023, because it is 94 days less than his full-term release date. This date does not include his FSA credits. Attachment 1, p. 1.

    e.  The report generated on April 12, 2022, shows Petitioner's FSA credits reflects 61 days. Attachment 1, p. 1.

    f.  Petitioner's projected release date via FSA reflects November 3, 2022, which is 61 days less than his statutory release date, January 3, 2023. However, as explained below the FSA credits were calculated incorrectly. Attachment 1 p. 1.

6.  BOP recently did a recalculation of Petitioner's FSA credits. A true and correct copy of Petitioner's complete sentence computation data titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as

-4-

Attachment 2. This report was generated on April 27, 2022 and shows the two

changes to Attachment 1, generated on April 12, 2022:

    a.  Petitioner's FSA credits reflects 75 days.[2] Attachment 2, p. 1.

    b.  Petitioner's projected FSA release date reflects October 20, 2022, which is 75

        days before his statutory release date via good conduct time release of January

        3, 2023. Attachment 2, p. 1.

7.  On January 13, 2022, the Department of Justice announced that BOP had finalized

the FSA time credit rule and transmitted it to the Federal Register for publication.

The final rule was published on January 19, 2022. This final rule explains BOP

procedures regarding implementation of the specific provisions, including those

related to the earning and application of FSA time credits.

8.  The BOP has already begun implementing the FSA final rule and will continue to do

so on a rolling basis. BOP has already begun applying FSA time credits. As of

January 31, 2022, thousands of inmates have already been released to community

custody, with hundreds more expected to be released to community supervision

---

[2] This reflects an additional 14 days of FSA credit from the initial calculation in Attachment 1.

within 30 days. It is anticipated that in the months to come, thousands more will be eligible for release.

9. On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule. Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement. These interim procedures will remain in effect during this initial period and will continue pending the completion of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

10. During the initial period and beyond, BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits.

11. For purposes of FSA time credit calculations, BOP is in the process of creating and implementing an application to fully automate calculations so that ORE will no longer have to manually calculate time credits for each inmate. BOP expects to "go live" with this application in the coming months.

12. In the meantime, the BOP decided to set certain cutoff dates for manual FSA time credit calculations to ease the burden on staff. Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system. In other words, until the automated system is implemented, Petitioner's calculation will remain at 75 days despite his eligibility to earn additional days each month.

13. Under the interim procedures, the BOP is calculating credit based on the total number of days in the inmate's designated facility, divided by 30 days (one-month average), and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels which is applicable to Petitioner).

14. The BOP uses the date in which an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes. Batch data is available monthly and is extracted on the last Saturday of the last full week of the month. Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release data, were extracted and time credits were calculated.

15. Due to his impending statutory release date on January 3, 2023, the BOP grouped Petitioner in the initial batch of calculations with a cutoff date of December 25, 2021. The start date for Petitioner's FSA calculations is July 28, 2021, the date he arrived at his designated institution. He remained at his designated institution, and in good standing between July 28, 2021, and December 25, 2021. Thus, he had a total of 150 days of eligible time. Using the interim procedures, the FSA calculation was done as follows: 150 days, divided by 30 days, times 15 days = 75 days. Accordingly, Petitioner earned 75 days of FSA credit for the time he served between July 28, 2021, and December 25, 2021.

16. To date, ORE has not recalculated Petitioner's time credits to reflect credit for the past four months (January – April) despite his eligibility to earn time credits. Like many other similarly situated BOP inmates, Petitioner's FSA time calculations are governed by the interim guidance. At this time, the BOP does not intend to recalculate FSA time credits for inmates that have already been reviewed, until implementation of the automated system. As stated above, once the automated system is up and running Petitioner's FSA credits will be updated to include any

additional FSA credit that he is entitled to, that have not already been included in this initial calculation.

17. My understanding is that OIT is working diligently to implement the automated system. Although it is unclear when exactly the system will go live, my understanding is that OIT is in the final stages of software testing and could potentially go live within the next 90 days barring any unforeseen circumstances.

18. The BOP does not calculate time credits based on future projected days. Credit is earned as it accumulates. This is because an inmate does not earn time credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit. It is entirely possible Petitioner may not earn time credits in the future.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of April, 2022.

SUSAN GIDDINGS
Unit Management Section, Chief
Correctional Programs Branch
Federal Bureau of Prisons

# EXHIBIT

# "D"

FILE
2022 Jun-06 PM (
U.S. DISTRICT CO
N.D. OF ALAB

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

ROBERT S. STEWART, JR.,    )

        )

    Petitioner,    )

        )

v.    )    Case No.: 1:22-cv-294-MHH-JHE

        )

WARDEN SEAN SNIDER,    )

        )

    Respondent.    )

## FINAL ORDER

Consistent with the memorandum opinion recently entered in this matter, the Court grants Mr. Stewart's petition for writ of habeas corpus. The Respondent shall award Petitioner Robert S. Stewart, Jr. all credit earned between the BOP's December 25, 2021 calculation and April 28, 2022, and the Respondent shall reevaluate Mr. Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system.

Costs are taxed as paid.

**DONE** and **ORDERED** this June 6, 2022.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

ROBERT S. STEWART, JR.,            )
                                   )
    Petitioner,               )
                                   )
v.                                 )      Case No.: 1:22-cv-294-MHH-JHE
                                   )
WARDEN SEAN SNIDER,                )
                                   )
    Respondent.               )

## MEMORANDUM OPINION

On May 10, 2022, the Magistrate Judge entered a Report and Recommendation. (Doc. 15). The Magistrate Judge recommended that the Court deny the Respondent's motion to dismiss, grant Mr. Stewart's petition for writ of habeas corpus, and order the Respondent to award Mr. Stewart all credit earned between the BOP's December 25, 2021 calculation and April 28, 2022. The Magistrate Judge also recommended that the Court direct the Respondent to reevaluate Mr. Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system. (Doc. 15). The Magistrate Judge advised the parties of their right to file specific written objections to his report. (Doc. 15). The time to file written objections has passed, and the Court has not received objections.

Case 1:22-cv-00294-MHH-JHE   Document 16   Filed 06/06/22   Page 2 of 2

The Court adopts the findings and analysis in the Report and Recommendation.  Therefore, the Court denies the Respondent's motion to dismiss.  (Doc. 11).  The Court grants Mr. Stewart's petition for writ of habeas corpus.  By separate order, the Court will direct the Respondent to award Mr. Stewart all credit earned between the BOP's December 25, 2021 calculation and April 28, 2022, and the Court will direct the Respondent to reevaluate Mr. Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system.

**DONE** and **ORDERED** this June 6, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

ROBERT S. STEWART, JR., )
)
    Petitioner, )
)
v. )   Case No.: 1:22-cv-00294-MHH-JHE
)
WARDEN SEAN SNIDER, )
)
    Respondent. )
)

## REPORT AND RECOMMENDATION

Petitioner Robert S. Stewart, Jr. ("Stewart" or "Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking an order directing the Bureau of Prisons ("BOP") to apply First Step Act ("FSA") Earned Time Credits ("ETC") toward his remaining home confinement term. (Doc. 1). Because Stewart's challenge to the BOP's calculation of credits is a challenge to the execution of his sentence, the petition is properly brought as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court for the district in which Stewart is in custody. *See United States v. Kinsey*, 393 F. App'x 663, 664 (11th Cir. 2010) (per curiam) (noting that § 2241 "is the appropriate means by which an inmate may challenge the [BOP's] calculation and execution of his sentence") (citing *Bishop v. Reno*, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000)). The petition was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for preliminary review. Upon consideration, the undersigned recommends Respondent's Motion to Dismiss (doc. 11) be **DENIED**. The undersigned further recommends the petition be **GRANTED** to the extent described below.

### I. Relevant Facts and Claims

Stewart is a federal inmate currently on home confinement within this district. (Doc. 1).

Case 1:22-cv-00294-MHH-JHE Document 15 Filed 05/10/22 Page 2 of 16

On June 16, 2021, the United States District Court for the Eastern District of Virginia sentenced Stewart to a 21-month term of imprisonment for False Statements, Wire Fraud, and Theft of Government Funds. (Doc. 11-1 at ¶ 5; doc. 11-3). The Sentencing Court ordered Stewart to voluntarily surrender to his designated facility as directed by the BOP. (Doc. 11-3.). On July 28, 2021, Stewart voluntarily surrendered to the Federal Correctional Institution ("FCI") Talladega Satellite Camp to commence his federal sentence. (Doc. 11-1 at ¶ 6). According to Respondent, Stewart's current projected First Step Act ("FSA") release date is October 20, 2022. (*Id.* at ¶ 18; doc. 11-2). Since February 2022, Stewart has been in the BOP's custody on home confinement. (Doc. 11-6).

Stewart requests the Court order the BOP to apply 15 days of ETC for each 30 days of his confinement between January and April 2022 based on his completion of nine Evidence-Based Recidivism Reduction ("EBBR") courses. (Docs. 1, 6, & 7).

Specifically, Stewart contends he is entitled to ETC of 15 days per month, multiplied by 9 months, which is 135 days of FSA ETC. (Doc. 14 at 14). According to Stewart, the BOP has only granted him 75 days; thus, his projected release date of October 20, 2022, should be August 19, 2022, to include the additional 60 days. (*Id.*; *see also* doc. 7 at 3, 4). Additionally, Stewart requests the Court order the BOP to apply projected ETC for the months of May and June 2022, which would move his projected release date to July 19, 2022. (Doc. 7 at 4).

## II. Procedural History

On April 29, 2022, Respondent filed a response to Stewart's petition seeking to have the petition summarily dismissed without an evidentiary hearing. (Doc. 11). That same day, the undersigned entered an order informing Stewart of his right to file affidavits or other materials in opposition to the response and of the possible consequences of not responding. (Doc. 12). The

undersigned further advised that, thereafter, the petition would be taken under advisement, and the undersigned would enter a report and recommendation without further notice. (*Id.*). On May 2, 2022, the Court received a document from Stewart titled "Petitioner's Reply Opposing Summary Respondents' Motion for Summary Judgment." (Doc. 14). The petition is ripe for review.

## III. Analysis

### A. Exhaustion Requirement

Generally, a federal prisoner must exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (quoting *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) ("'We agree with the reasoning of our sister circuits and hold that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements.'")). While *Santiago-Lugo* altered Eleventh Circuit law to the effect that it "is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding," as the Court also held, "that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Id.* at 474–75. The Eleventh Circuit further explained that "because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Santiago-Lugo*, 785 F.3d at 475.

Simply put, "[t]he exhaustion requirement is still a requirement; it's just not a jurisdictional one." *Santiago-Lugo*, 785 F.3d at 475. A petitioner who has failed to exhaust administrative remedies will find his petition dismissed on those grounds. *See, e.g., Villagran v. United States*, No. 7:18-CV-0101-LSC-JEO, 2020 WL 3022494, at *2 (N.D. Ala. May 13, 2020), report and

recommendation adopted, No. 7:18-CV-00101-LSC-JEO, 2020 WL 3000964 (N.D. Ala. June 4, 2020). Moreover, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). Exceptions to this exhaustion requirement apply only in "'extraordinary circumstances'" and the petitioner "'bears the burden of demonstrating the futility of administrative review.'" *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)).

"In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules. *See Woodford*, 548 U.S. at 90–91, (addressing the exhaustion requirement in the Prison Litigation Reform Act)." *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) (some internal citations omitted). The BOP has a four-step process for resolving complaints by prisoners. 28 C.F.R. § 542.10. Initially, a prisoner must attempt to informally resolve the complaint with staff. *Id.* § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the warden. *Id.* § 542.14. If the prisoner is unsatisfied with the warden's response, he may appeal to the Regional Director. *Id.* § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel within thirty days of the Regional Director's response. *Id.*

Here, Stewart acknowledges that he did not exhaust all available administrative remedy requests before seeking relief under 28 U.S.C. § 2241. (*See* doc. 14 at 15). Instead, Stewart contends he attempted to comply with the BOP's administrative remedy process, but he was released to home confinement before being able to submit the proper forms. (Doc. 14 at 14-15, 27-32; *see also* doc. 7 at 3). Stewart also argues that he attempted to follow the administrative

4

remedy process, but that he did not get a timely response from the BOP and that continuing to wait would "negatively impact[]" him. (Doc. 14 at 18-19).

The Eleventh Circuit has suggested that exhaustion may be excused where "'requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action.'" *Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)). This occurs when a petitioner can show "'irreparable harm if unable to secure immediate judicial consideration of his claim.'" *Id.* (quoting *McCarthy*, 503 U.S. at 147).

Stewart did not exhaust his administrative remedies. Nonetheless, considering Stewart's impending release date, balancing the interests favors promptly deciding the issues Stewart raises over the institutional interests protected by the exhaustion defense.

### B. Merits of First Step Act Earned Credit Time Claim

#### 1. Authority to Calculate Sentences

The Attorney General, through the BOP, administers inmate sentences. *See* 18 U.S.C. § 3621(a). The BOP has exclusive jurisdiction to determine sentence credits for inmates in the first instance. "After a district court sentences a federal offender, the Attorney General, though the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The BOP utilizes extensive policies in this administration. Stewart alleges that the BOP improperly calculated his sentence; however, Respondent contends Stewart does not establish that the BOP failed to follow its policies. (Doc. 11 at 6-7).

#### 2. Calculation of Stewart's Sentence

According to 18 U.S.C. § 3585(a), as referenced in the BOP Program Statement 5880.28, Sentence Computation Manual ("CCCA of 1984"), a sentence to a term of imprisonment

commences on the date the defendant is received in custody awaiting transportation to the official

detention facility where the sentence is to be served. On July 28, 2021, Stewart voluntarily

surrendered to FCI Talladega Satellite Camp to commence his federal sentence. (Doc. 11-1 at ¶

6; doc. 11-6). Thus, the BOP calculated Stewart's federal sentence as commencing on July 28,

2021, the date he self-surrendered.

The application of prior custody credit toward a federal sentence is governed by 18 U.S.C.

§ 3585(b), which states:

> (b) Credit for prior custody. – A defendant shall be given credit toward the service
> of a term of imprisonment for any time he has spent in official detention prior to
> the date the sentence commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or
> > (2) as a result of any other charge for which the defendant was arrested after the
> > commission of the offense for which the sentence was imposed;
> > *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added).  Because the time Stewart spent in custody from February

3, 2021, through February 22, 2021, was not credited towards any other sentence, the BOP granted

Stewart 20 days of credit toward his federal sentence for this time period. (Doc. 11-1 at ¶ 12; doc.

11-2).

According to the BOP Program Statement 5880.28, CCCA of 1984, the BOP applies good

conduct time ("GCT") in accordance with 18 U.S.C. § 3624(b).  The BOP has interpreted this

statute to apply GCT only for time served rather than the length of the sentence imposed. *See*

*Barber, et al. v. Thomas, et al.*, 560 U.S. 474 (2010) (upholding this interpretation).  Prior to the

FSA, the BOP would award 54 days of GCT for each year served. (Doc. 11-1 at ¶ 13).  On

December 21, 2018, the President signed the First Step Act of 2018 into law. *See* FSA, Public

Law 115-391.  Prior to the enactment of the FSA, GCT credit was applied only for time *actually*

*served*, rather than the length of the sentence imposed.  The FSA amended 18 U.S.C. § 3624(b),

6

to provide for the application of GCT credit "of up to 54 days for each year of the prisoner's sentence imposed by the court[,]" which is a change to the prior law. (Doc. 11-1 at ¶ 14; doc. 11-9). The amendments to § 3624(b), took effect on July 19, 2019. The changes made to the GCT earnings were made retroactive, but applicable only to sentences not yet satisfied as of July 19, 2019; therefore, any sentence satisfied prior to the effective date of the FSA is not eligible to receive additional GCT credits. (Doc. 11-1 at ¶ 15; doc. 11-10).

According to Respondent, Stewart is currently earning 54 days of GCT and projected to earn a total of 94 days of good conduct time credit and has no disallowances. (Doc. 11-1 at ¶ 16; doc. 11-10; doc. 11-11). Stewart does not dispute this calculation. (*See* doc. 14 at 2).

Additionally, among several other reforming provisions, the FSA provides an incentive for inmate participation in Evidence-Based Recidivism Reduction ("EBRR") programming, such as classes and productive activities. The FSA calls this incentive Earned Time Credits ("ETC" or "ECT"). To earn these credits, inmates must complete 30 days of pre-approved, qualifying programming, defined as EBRR courses and Productive Activities, to earn 10 days of ETC. This ETC can either be applied to lengthen an inmate's pre-release custody, such as home confinement or half-way house placement, or be applied to early transfer to supervised release, i.e., early satisfaction of the inmate's sentence. To further qualify, inmates must be classified with a Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") risk score of "low" or "minimum."

Under 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") was required to "publish[] the risk and needs assessment system on July 19, 2019." *Hand v. Barr*, No. 1:20-cv-348, 2021 WL 392445, at *2 (E.D. Cal. Feb. 4, 2021) (citing Press Release, U.S. Dep't of Justice, *Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes*

*Risk And Needs Assessment System* (July 19, 2019), https://www.justice.gov/opa/pr/department-

justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and).

With respect to implementation of the risk and needs assessment system, 18 U.S.C. §

3621(h) provides:

> (1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--
>
> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>
> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and
>
> (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.
>
> (2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--
>
> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
>
> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1)–(2); *see also Hand*, 2021 WL 392445, at *2.

Under 18 U.S.C. § 3621(h)(1), "all inmates in the BOP system received an initial

assessment using the risk and needs assessment system known as the Prisoner Assessment Tool

Targeting Estimated Risk and Need ('PATTERN') by January 15, 2020." *Hand*, 2021 WL 392445, at *3 (citing Press Release, U.S. Dep't of Justice, *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act). Those inmates who successfully "complete[ ] evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of time credits for every 30 days of successful participation.'" 18 U.S.C. § 3632(d)(4)(A). As the FSA provides, an inmate who is found "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A)(ii).

The FSA specifically states that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter." *Id.* § 3632(d)(4)(B). The BOP's website states that "'FSA Time Credits (FTC) may only be earned for completion of assigned evidence-based recidivism reduction programs or productive activities authorized by BOP and successfully completed on or after January 15, 2020.'" Federal Bureau of Prisons, *First Step Act – Frequently Asked Questions*, https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (last visited May 5, 2022).

"The [First Step Act] provides that by January 15, 2020, BOP 'implement and complete the initial intake risk and needs assessment for each prisoner, begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination, and begin to expand the effective evidence-based recidivism reduction programs and productive activities it

9

offers.'" PATTERN at 5 (quoting 18 U.S.C. §§ 3621(h)(1)(A)–(B)). "'In order to carry out [18 U.S.C. § 3621(h)(1)], so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need,' BOP shall 'provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A).'" *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)). As a result, the FSA gives the BOP "two years—until January 15, 2022 . . . to 'phase-in' the evidence-based recidivism reduction programs and productive activities for all prisoners." *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)).

On January 13, 2022, the DOJ announced that the BOP had finalized the FSA time credit rule and transmitted it to the Federal Register for publication. (Doc. 11-14 at ¶ 7). The final rule was published on January 19, 2022. (*Id.*). This final rule explains the BOP procedures regarding implementation of the specific provisions, including those related to the earning and application of FSA time credits. (*Id.*). The BOP has already begun implementing the FSA final rule and will continue to do so on a rolling basis. (*Id.* at ¶ 8). The BOP has already begun applying FSA time credits. (*Id.*). As of January 31, 2022, thousands of inmates have already been released to community custody, with hundreds more expected to be released to community supervision within 30 days. (*Id.*). It is anticipated that in the months to come, thousands more will be eligible for release. (*Id.*).

On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule. (Doc. 11-14 at ¶ 9). Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement. (*Id.*). According to Respondent, these interim procedures will remain in effect during

this initial period and will continue pending the completion of an auto-calculation application to the BOP's real-time information system (known as SENTRY) and full integration between SENTRY and the BOP's case management system (known as INSIGHT). (*Id.*). Respondent assures the Court that, during the initial period and beyond, the BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits. (*Id.* at ¶ 10).

For purposes of FSA time credit calculations, Respondent asserts that the BOP is in the process of creating and implementing an application to fully automate calculation so that the BOP Office of Research and Evaluation ("ORE") will no longer have to manually calculate time credits for each inmate. (Doc. 11-14 at ¶ 11). The BOP expects to "go live" with this application in the coming months. (*Id.*). Currently, to ease the burden on staff, the BOP decided to set certain cutoff dates for manual FSA time credit calculation. (*Id.* at ¶ 12). Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system. (*Id.*).

Under these interim procedures, the BOP is calculating credit based on the total number of days in the inmate's designated facility divided by 30 days (one-month average) and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels). (Doc. 11-14 at ¶ 13). BOP uses the date an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes. (*Id.* at ¶ 14). Batch data is available monthly and is extracted on the last Saturday of the last full week of the month. (*Id.*). Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release date were extracted and their FSA time credits were calculated. (*Id.*).

Due to his impending statutory release date, the BOP grouped Stewart in the initial batch of calculations with a cutoff date of December 25, 2021. (Doc. 11-14 at ¶ 15). Respondent admits

that, originally, the BOP incorrectly calculated Stewart's FSA credits to be 61 days. (Doc. 11-14 at ¶ 4; doc. 11-15). However, the BOP conducted a new calculation, which resulted in Stewart receiving 75 days of FSA credit. (Doc. 11-14 at ¶ 4; doc. 11-16).

The start date for Stewart's FSA calculations is July 28, 2021, the date he arrived at his designated institution. (Doc. 11-14 at ¶ 15). He remained at his designated institution, and in good standing between July 28, 2021, and December 25, 2021. (*Id.*). Thus, he had a total of 150 days of eligible time. (*Id.*). Using the interim procedures, the FSA calculation was performed as follows: 150 (Stewart's eligible days) ÷ by 30 days (one month average) x 15 (allowable credit for inmates like Stewart with Low or Minimum risk levels) = 75. (*Id.*; doc. 11-16). Accordingly, Stewart earned 75 days of FSA credit for the time he served from July 28, 2021, through December 25, 2021. (Doc. 11-14 at ¶ 15; doc. 11-16).

To date, ORE has not recalculated Stewart's FSA ETC calculations to reflect credit for the past four months (approximately January – April) despite his eligibility to earn them. (Doc. 11-14 at ¶ 16). Like many other similarly situated BOP inmates, Stewart's FSA time calculations are governed by the interim guidance. (*Id.*). At this time, the BOP does not intend to recalculate FSA time credits for inmates that have already been reviewed, until implementation of the automated system. (*Id.*). As stated above, once the automated system is up and running Stewart's FSA credits will be updated to include any additional FSA credit that he is entitled to, that have not already been included in this initial calculation. (*Id.*). According to Respondent, the BOP Office of Information Technology ("OIT") is working diligently to implement the automated system. (*Id.* at ¶ 17). Although it is unclear when exactly the system will go live, OIT is in the final stages of software testing and could potentially go live within the next 90 days, or approximately early August 2022, barring any unforeseen circumstances. (*Id.*).

The BOP does not calculate time credits based on future projected days. (Doc. 11-14 at ¶ 18). Credit is earned as it accumulates. (*Id.*). This is because an inmate does not earn time credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit, (*id.*), and it is possible Stewart may not earn time credits in the future. Thus, Stewart's request that the Court order the BOP to apply projected FSA ETC to his sentence for May and June 2022, which he has not yet earned (doc. 7 at 4), is due to be denied.

Respondent contends that the constantly evolving FSA rules and regulations have required the BOP to use its discretion in how and when to calculate FSA credits for all BOP inmates, including Stewart. (Doc. 11 at 17). The BOP has calculated Stewart's FSA ETC and awarded him 94 days of GCT and 75 FSA days for the time he served from July 28, 2021 through December 25, 2021. Once the new system "goes live," Respondent contends that Stewart, just like every other inmate who was in the batch with a cutoff date of December 25, 2021, will have his FSA credits updated automatically and be awarded any credits for the time period after December 25, 2021. (Doc. 11 at 17).

While there does not appear to be anything inherently wrong with the BOP's interim guidance, its application to inmates like Stewart, who are nearing the end of their custody term causes concern. Based only on the credits applied to Stewart's sentence as of December 25, 2021, the BOP calculates his projected release date as October 20, 2022. (Doc. 11-1 at ¶ 18; doc. 11-14 at ¶ 6). According to Stewart, applying 60 days for ETC earned between the BOP's last calculation on December 25, 2021 and April 28, 2022 moves his projected release date to August 2022. (Doc. 7 at 3, 4; doc. 14 at 14, 24). If correct, requiring Stewart to wait until August 2022, or longer, to receive credits for time earned after December 25, 2021 could likely prejudice him by depriving

him of credits he has earned.[1]  As Respondent states, it is unclear when the automated system will be up and running.  While it could be within the next 90 days, that is not guaranteed, and Respondent even hedges this statement with the caveat "absent unforeseen circumstances."  (*See* doc. 14 at 16-17).  Thus, the assertion that Stewart will receive these credits within the next couple months, i.e., in time for them to impact the remainder of his sentence, is speculative.

Respondent does not expressly dispute that Stewart has earned additional ETC between BOP's last calculation on December 25, 2021, and April 28, 2022, which could result in an earlier release date. (Doc. 11 at 16).  If Stewart has indeed earned additional credits during his time, then they should be awarded to him and reflected in his sentence.  Additionally, because of the uncertainly of the automated system's implementation and Stewart's approaching release date, it is necessary for BOP to reevaluate the application of Stewart's credits at regular intervals, not to exceed every 60 days.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss (doc. 11) be **DENIED**.  The undersigned **FURTHER RECOMMENDS** the petition for a writ of habeas corpus be **GRANTED**, and the BOP be ordered to award Stewart any credit earned between the BOP's December 25, 2021 calculation and April 28, 2022; and the BOP be further ordered to reevaluate Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system.

---

[1] Stewart's claim seeking credits against his sentence will not be rendered moot by his release. After his release from home confinement, he will transition to supervised release, which is part of his sentence and involves some restrictions upon his liberty. *See Shorter v. Warden*, 803 F. App'x 332, 335 (11th Cir. 2020) (citations omitted).

## V. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the

United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE this 10th day of May, 2022.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE